United States District Court
Southern District of Texas
**ENTERED**
February 10, 2026
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

| | | |
|---|---|---|
| **TEMUR PUKHAEV,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 5:25-CV-240** |
| | § | |
| **MIGUEL VERGARA, ET AL.,** | § | |
| | § | |
| **Respondents.** | § | |

### MEMORANDUM OPINION AND ORDER

Petitioner Temur Pukhaev is currently in federal custody at the Webb County Detention Center in Laredo, Texas. (Dkt. No. 1 at 4). [1] Before the Court is Petitioner's Petition for Writ of Habeas Corpus, (Dkt. No. 1), and Respondents' Response to Petition for Writ of Habeas Corpus and Motion for Summary Judgment, (Dkt. No. 13). Pukhaev seeks immediate release, contending that his re-arrest and continued detention without a bond hearing under 8 U.S.C. § 1226(a) violated his constitutional rights.

### I. BACKGROUND

Petitioner is a citizen of Russia. He states that he fled Russia with his wife and three daughters after Russian law enforcement and other Russian government actors subjected him to political persecution and physical torture. (Dkt. No. 1 at 13). He applied for admission to the United States at the Otay Mesa Port of Entry in Otay Mesa, California on or around June 30, 2022. (*Id.*; Dkt. 13-1 at 2). On July 1, 2022, U.S. Customs and Border Protection (CBP) processed the family as a unit and granted humanitarian parole for Petitioner until June 29, 2023. (Dkt. No. 1 at 13; Dkt. No. 1-2 at 2). The Department of Homeland Security (DHS) also issued a Notice to Appear (NTA) to Petitioner as an arriving alien, initiating removal proceedings under Section 240 of the

---

[1] When citing to the page numbers of any document in the record, the Court will cite to the page numbering of the Court's internal CM/ECF docket system, and not to the page numbers in the underlying documents.

Immigration and Nationality Act (INA) and requiring him to appear for a hearing on October 13, 2022, in New York. (Dkt. No. 1 at 14; Dkt. No. 13-1 at 2; Dkt. 1-3 at 1). Petitioner states that he applied for asylum on August 22, 2022. (Dkt. No. 1 at 14).

At his immigration hearing on October 13, 2022, the Immigration Judge reset the hearing for an individual merits hearing on December 22, 2027. (Dkt. No. 1 at 14). DHS granted Petitioner work authorization in March 2023, which was extended to May 2030. (*Id.*; Dkt. No. 1-4). However, DHS did not extend Petitioner's humanitarian parole, which expired on June 29, 2023. (Dkt. No. 13-1 at 2).

On September 27, 2025, Petitioner was stopped near the Laredo North Checkpoint near Laredo, Texas, as he was driving through Texas from San Antonio to Laredo to pick up cars to transport to Pennsylvania. (Dkt. No. 13-1 at 2; Dkt. No. 1 at 14). When asked if he was a citizen or a legal permanent resident, Petitioner showed CBP officers his work authorization and valid driver's license, but he was arrested and later transferred to the Webb County Detention Center on or around October 15, 2025. (Dkt. No. 1 at 14; Dkt. No. 13-1 at 3).

Petitioner filed the instant petition for a writ of habeas corpus, (Dkt. No. 1). He contends that he was unlawfully re-arrested and re-detained and seeks his immediate release, a declaration that his detention violates the Due Process Clause of the Fifth Amendment and the Administrative Procedures Act (APA), and other relief. (*Id.* at 19). Respondents move for summary judgment, arguing that (1) Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) as an arriving alien and (2) this Court lacks jurisdiction to review the termination of Petitioner's humanitarian parole under 8 U.S.C. §§ 1252(a)(2)(B) and 1182(d)(5)(A). (Dkt. No. 13 at 6–7).

## II. LEGAL STANDARDS

### A. 28 U.S.C. Section 2241

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687

(2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005).

### B.  8 U.S.C. Sections 1226 and 1225

Section 1226(a) of Title 8 of the United States Code provides: "On warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Thus, "the Attorney General may release an alien detained under § 1226(a) on bond or conditional parole." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (citation modified). In contrast, "aliens who are covered by [8 U.S.C. Section] 1225(b)(2) are detained pursuant to a different process" and "'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country." *Id.* (quoting § 1225(b)(2)(A)).

### C. Rule 56 Motion for Summary Judgment

A "court shall grant summary judgment if the movant shows that there is no genuine dispute of any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must consider the record to determine whether a genuine dispute exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). However, the Court must view the facts in the light most favorable to the nonmoving party. *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019).

### III. DISCUSSION

Respondents request that the Court deny the petition, asserting that Petitioner is properly detained under 8 U.S.C. § 1225, the Court lacks jurisdiction to review discretionary termination of parole, and Petitioner fails to state a due process claim. The Court will grant Respondents' motion for summary judgment after finding that Petitioner is subject to mandatory detention as an arriving alien.

### A. Petitioner Is Subject to Mandatory Detention

Petitioner argues that he was given permission to enter the United States on or about July 1, 2022 under humanitarian parole. He contends that although his parole was set to expire on June 29, 2023, nothing in the record supports that it was properly revoked. (Dkt. No. 15 at 5). He claims that since he was later apprehended in the interior of the United States, he is not presently "seeking admission" and does not fit under the

mandatory detention provision in Section 1225(b) but that he falls under Section 1226(a).

Respondents contend that Petitioner is subject to mandatory detention under Section 1225(b) because he is an "arriving alien." The record reflects that Petitioner arrived at a port of entry in Otay Mesa, California, and presented himself to immigration officials as an arriving alien seeking admission to the United States on or around June 30, 2022. He was detained upon arrival and issued a Notice to Appear, placing him in removal proceedings. (Dkt. No. 1-3 at 1).

As this Court explained in *Karastoian v. Bondi*, No. 5:25-cv-233, 2026 WL 194391 (S.D. Tex. Jan. 22, 2026), Petitioner is subject to mandatory detention under Section 1225(b)(2) as an arriving alien under 8 CFR § 1001.1(q). *Id.* at *3.

In addition, Petitioner's claim that his humanitarian parole operated as an admission or otherwise removed him from his status as an arriving alien is contrary to Section 1182(d)(5)(A), which governs humanitarian parole and provides:

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C.A. § 1182(d)(5)(A). Thus, his humanitarian parole does not modify the proper detention authority because "[o]nce the purpose of parole has been served or the parole period expires, the noncitizen is returned to custody and continues to be classified as an arriving alien." *Karastoian*, 2026 WL 194391, at *3 (citing 8 U.S.C. § 1182(d)(5)(2), 8 C.F.R. § 1001.1(q), and holding that "Petitioner's expired humanitarian parole does not preclude him from being detained under 8 U.S.C. § 1225(b) because he remains classified as an arriving alien").

Therefore, the Court finds that Petitioner is subject to mandatory detention under Section 1225(b) and he is not entitled to a bond hearing. Respondent's motion for

summary judgment regarding detention authority is **GRANTED**.

### B. The Court Lacks Jurisdiction to Review Discretionary Denials of Humanitarian Parole

Petitioner claims that the revocation of his parole violated the Administrative Procedure Act (APA) and his rights under the Fifth Amendment Due Process Clause. Respondents contend, under 8 U.S.C. § 1252(a)(2)(B), that the Court lacks jurisdiction to review DHS's discretionary decisions to revoke or deny parole, and the APA does not provide a basis to overcome the jurisdictional bar. The Court agrees.

Congress precluded judicial review of discretionary decisions to grant humanitarian parole in Section 1252(a)(2)(B). It provides, in relevant part:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision . . . no court shall have jurisdiction to review . . . any [] decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . . other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B). Section 1182(d)(5)(A) falls within the referenced "subchapter" in Section 1252 (a)(2)(B)(ii). *See Karastoian*, 2026 WL 194391, at *4 (citing *Kucana v Holder*, 558 U.S. 233, 239 n. 3 (2010)). The jurisdictional bar applies to any decision or action made discretionary by statute, including Section 1182(d)(5)(A). *Id.*

Likewise, the APA does not apply where "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). As set forth above, Section 1252(a)(2)(B) bars judicial review of humanitarian parole determinations, and Section 1182(d)(5)(A) entrusts such determinations to the discretion of the Executive Branch. Therefore, the Court lacks jurisdiction to review the discretionary humanitarian parole decisions at issue here.[2]

---

[2] Respondents' motion asserts that "[t]he Court lacks jurisdiction to *review the termination of Petitioner's parole* under the APA, because such discretionary decisions are precluded from judicial review by statute." (Dkt. No. 13 at 6) (emphasis added). However, the Court does not reach this question nor conclude that the Court would never have jurisdiction to review the termination of humanitarian parole. Instead, because Petitioner's grant of humanitarian parole expired in 2023—well before his detention began in 2025—the Court only finds that it cannot review the agency's failure to extend or grant additional relief under humanitarian parole.

### IV. CONCLUSION

For the foregoing reasons, Respondents' Response to Petition for Writ of Habeas Corpus and Motion for Summary Judgment, (Dkt. No. 13), is **GRANTED**. Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, (Dkt. No. 1), is **DENIED**.

It is so **ORDERED**.

**SIGNED** on February 10, 2026.

John A. Kazen
United States District Judge